MATHIEU, APPELLANT, v. DUDLEY, ADMR., BUREAU OF UNEMPLOY-
MENT COMPENSATION, ET AL., APPELLEES.

[Cite as Mathieu v. Dudley, Admr., 10 Ohio App. 2d 169.]

(No. 8518—Decided May 23, 1967.)

*Messrs. Clayman, Jaffy & Taylor,* for appellant.

*Mr. William B. Saxbe,* attorney general, *Mr. Bernard Hef-
fernan* and *Mr. Charles W. Waterfield,* for appellees Willard
P. Dudley, Administrator, Bureau of Unemployment Com-
pensation, and the Board of Review.

DUFFEY, P. J. This is an appeal from an order of the Com-
mon Pleas Court of Franklin County affirming a decision of the
Board of Review, Bureau of Unemployment Compensation. The

board, by a vote of two to one, denied appellant unemployment benefits under Section 4141.29, Revised Code.

In 1949, appellant applied for employment at The Jaeger Machine Company. On her application she stated that she was 40 years of age, although she actually was 49. She was hired by the company in February 1949 as a clerk-typist. For the next 16 years she continued in her employment. Her employer has stated that during this time "Her record as an employee was excellent, both from the standpoint of attendance and quality of work."

In 1949, The Jaeger Machine Company did not have a retirement plan applicable to appellant. Between 1949 and 1964, there was never any occasion for discussion between appellant and any official or representative of the company concerning her age, or with respect to the effect her age would have upon a retirement system or upon any other factors affecting her employment.

On June 12, 1961, Jaeger adopted an employee retirement plan for nonunion salaried employees. The plan is noncontributing and nonvested. It is automatic and not optional. No application for coverage was required of any employee. The record does not indicate that appellant or any other employee was consulted or contacted in connection with the plan.

In December 1963, or perhaps early January 1964, appellant went to her supervisor and informed him of her true age —then 63. Her supervisor wanted to consider the matter, and she was informed they would let her know. Three months later, on March 19, 1964, appellant was given a letter which, as pertinent, stated:

"March 19, 1964

"Patricia A. Mathieu
462 Chase Rd.
Columbus 14, Ohio

"Dear Pat:

"We now understand that at the time you made application for a position with this Company, you misrepresented your age and that you actually were nine years older than you represented yourself to be. In view of the costs inherent in our retirement systems, we have reviewed your situation and have concluded that it is necessary to do one of two things: (1) discon-

tinue your services, or (2) retain you until you reach the age of 65, at which time you can qualify for Social Security benefits but with the understanding that you will not participate in the Company's retirement program.

"If you prefer to continue to work until you reach the age of 65, will you please so indicate in the space provided at the bottom of this letter. Such an indication will be an agreement on your part that you waive any interest you may have in the retirement system and you will thereby agree that you will not be entitled to any retirement benefits of any kind from the Company.

"We regret that circumstances are such as to force us to take this action and we trust you will understand the Company is attempting to be fair by continuing you as an employee until you reach the age of 65.

"Very truly yours,
"THE JAEGER MACHINE COMPANY
"By —————————————
Richard L. Sutton,
Industrial Relations Manager
"RLS:gl
"In consideration of the Company's retention of my services as an employee, I hereby waive any interest I may have in any retirement program the Company may have and agree that I am to receive no retirement benefits of any kind when my employment is severed upon my reaching the age of 65.

"————————————
(Witness)
"————————————          ————————————
(Date)                    Patricia A. Mathieu"

Appellant continued in her employment until her 65th birthday, March 30, 1965. At that time she wished to continue working, but her employment was terminated. The stated reason provided by Jaeger on its information report to the bureau was "Dropped—Company Policy—65 years of age." Appellant did not apply for and her employer did not give her any retirement benefits. Normal retirement under the terms of the plan would not have occurred until June 1965.

Appellee Dudley contends that benefits are properly denied

on the ground that appellant "quit his work without just cause." Section 4141.29 (D) (2) (a), Revised Code. However, the record shows that appellant was ready, willing and able to continue working and highly desirous of doing so. It is also clear that she was "dropped" by her employer, and she was not permitted to continue working. It is, therefore, most apparent that she was, in fact, discharged on March 30, 1965. In our opinion, it would be a sophistry to characterize this case as a "quit."

Appellee argues that appellant agreed to the termination of her employment on her 65th birthday and it is in this sense that she quit her job. In *Dudley, Admr.*, v. *Morris* (1966), 6 Ohio App. 2d 187, at 190, this court held:

"* * * An agreement for a future layoff is immaterial and irrelevant to a determination of the involuntary character of unemployment at the time of layoff except as it may be evidence of the employee's willingness to then take time off."

Appellant's unemployment was clearly involuntary at the time of the termination of her job.

Although not developed in the brief, appellee has also contended in the alternative that appellant was "discharged for just cause in connection with his work." Section 4141.29 (D) (2) (a), Revised Code. It is argued that appellant's misstatement of her age in her application at the time of hiring in 1949 provided "just cause" for her discharge as of January 1964 when she revealed this to her employer. This assumed right of discharge is then carried forward to March 1965 on the theory that under the 1964 letter contract appellant agreed that she would continue in her employment only until her 65th birthday and that having so agreed the contract became "just cause" for her discharge on March 30, 1965.

In our opinion, the original misstatement of her age was not shown on this record to have been such a material matter in connection with her employment as to have justified her discharge at any time. We, therefore, reject the initial factual premise of appellee's contention.

An employer may, of course, attach specific conditions or requirements to the hiring of prospective employees. The violation of a specific requirement of which the employee has been informed may be just cause for discharge. See *Coey* v. *Burwell Nurseries* (1965), 2 Ohio App. 2d 102. A deliberate misstate-

ment in an application for employment of a material fact might well constitute "just cause" for discharge upon its discovery. However, in this case, there is no evidence to indicate that in 1949 the employer had adopted any hiring policy with respect to the age of female clerk-typists. Nor is there any patent relationship between age and the duties of such a clerk. Appellant's testimony suggests only that at the time of her application she personally feared that her age might adversely affect her chances of being hired. So far as can be determined from the record, the question as to applicant's age was simply a routine part of the employment application. We might suggest that neither the board nor Jaeger should be surprised to learn that on occasion a lady does not always give her true age. Some women have been known to misstate their age with even less reason than this appellant.

Regardless of a specific company policy, age may be an important factor in hiring because of retirement plans. However, in this case, the employer had no retirement plan for clerk-typists in 1949, and did not establish one until 1961. Appellant's understatement of her age did not put her in a position to unjustly claim benefits—on the contrary, it would have delayed her obtaining them. Further, she never did claim any retirement benefits, and she waived any claim that she might have conceivably had.

Accordingly, on this record, we cannot find that, at the time appellant revealed her deception and the employer discovered her true age, the misstatement constituted "just cause" for her discharge.

Appellee also contends that the letter contract of March 19, 1964, provides a basis for denial of benefits. Appellant contends that the contract is irrelevant to the determination of her rights under the statutes and, in any event, that to apply the contract to deny her benefits would be to give the contract the effect of a waiver prohibited under Section 4141.32, Revised Code. Appellee relies in its contention upon *Ivy* v. *Dudley, Admr.* (1966), 6 Ohio St. 2d 261, and *Marcum* v. *Ohio Match Co.* (1965), 4 Ohio App. 2d 95. Compare *Dudley, Admr.,* v. *Morris* (1966), 6 Ohio App. 2d 187. We see nothing in *Ivy* or *Marcum* to support the broad proposition advanced by appellee.

With the possible exception of casual or incidental ser-

vice as defined in Section 4141.01 (B) (2) (m), Revised Code, the basic eligibility for unemployment benefits depends upon the establishment of an "employment" relationship followed by "involuntary unemployment." Section 4141.29, Revised Code. The fact that the unemployment is the result of the expiration of a contract for employment is irrelevant.

In *Ivy* and *Marcum,* the concept of discharge for "just cause" was expanded from one of fault to include an employee discharged under a retirement contract made binding on an employer by the provisions of a collective bargaining contract. The significant factor in those cases would seem to have been the existence of a vested contractual right to benefits which equaled or were better than the statutory benefits. In this case, there were no vested retirement rights and no collective bargaining contract. Appellant received and can receive no retirement benefits. She even has made a waiver of any conceivable claim to any retirement benefits. Accordingly, neither *Ivy* nor *Marcum* appears applicable.

The judgment of the Common Pleas Court will be reversed and the cause will be remanded to the Board of Review of the Bureau of Unemployment Compensation with instructions to allow the claim.

*Judgment reversed.*

DUFFY and TROOP, JJ., concur.