LORAIN COUNTY AUDITOR ET AL., APPELLEES, *v.* OHIO UNEMPLOYMENT COMPENSATION REVIEW COMMISSION ET AL., APPELLEES; DIR., OHIO DEPARTMENT OF JOB & FAMILY SERVICES, APPELLANT.

[Cite as *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.,* 113 Ohio St.3d 124, 2007-Ohio-1247.]

(Nos. 2005–2359 and 2005–2375—Submitted October 4, 2006—Decided April 4, 2007.)

———————

**O'CONNOR, J.**

{¶ 1} In this case, we are required to determine whether an intermittent-employment contract prevents an employee's eligibility for benefits under the Unemployment Compensation Act, R.C. Chapter 4141, once the employee is not scheduled for work. We hold that satisfaction of an intermittent-employment contract does not create voluntary unemployment or a discharge sufficient to render an employee ineligible for unemployment benefits.

## I. Background

{¶ 2} Appellant, the Ohio Department of Job and Family Services ("ODJFS"), appeals the decision to vacate the award of unemployment benefits to Kristie L. Brinkman.

{¶ 3} Brinkman was employed by the appellee, Lorain County Sheriff's Department ("Lorain"), as a registered nurse. At the commencement of her employment, Brinkman signed a contract agreeing to serve as an "intermittent employee," a position characterized "generally" by fewer than 1,000 hours of work during one fiscal year. After Brinkman served approximately 1,000 hours in fiscal year 2002, Lorain removed Brinkman from the work schedule. Brinkman filed for unemployment compensation benefits, and ODJFS issued a determination concluding that Brinkman was entitled to receive unemployment benefits.

{¶ 4} Lorain requested a reconsideration of the decision, and the director of ODJFS issued a redetermination affirming the original determination. Lorain appealed the redetermination, and ODJFS transferred jurisdiction to the Unemployment Compensation Review Commission. After a hearing, the review commission awarded Brinkman unemployment-compensation benefits and declined further review.

{¶ 5} Lorain appealed to the Lorain County Court of Common Pleas. The trial court reversed the decision of the review commission and vacated the award of benefits to Brinkman.

{¶ 6} ODJFS appealed the trial court's decision, asserting that the review commission's finding that Brinkman had been discharged without just cause, was

lawful, reasonable, and supported by credible evidence in the record. The appellate court disagreed. It held that an employee who voluntarily enters a fixed-term contract is not involuntarily unemployed at the term's end and that the review commission's decision to grant benefits to Brinkman was unlawful, unreasonable, and against the manifest weight of the evidence.

{¶ 7} The appellate court thereafter certified three cases as being in conflict with its decision in this case: *Mathieu v. Dudley* (1967), 10 Ohio App.2d 169, 39 O.O.2d 332, 226 N.E.2d 763; *Lexington Twp. Trustees v. Stewart* (Mar. 17, 1986), Stark App. No. CA–6766, 1986 WL 3925; and *Case W. Res. Univ. v. Ohio Unemp. Comp. Rev. Comm.*, Cuyahoga App. No. 81773, 2003-Ohio-2047, 2003 WL 1924645.

{¶ 8} On February 22, 2006, we determined that a conflict existed. The question certified is: "Is a claimant entitled to unemployment compensation when the claimant worked under a fixed-term contract and has completed the term of the contract?" *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.*, 108 Ohio St.3d 1469, 2006-Ohio-665, 842 N.E.2d 1050. We also accepted jurisdiction over a discretionary appeal in order to address whether a worker who is employed under an intermittent-schedule employment contract is involuntarily unemployed and eligible for benefits under R.C. 4141.29 for any weeks in which the worker is neither scheduled nor paid for work. *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.*, 108 Ohio St.3d 1473, 2006-Ohio-665, 842 N.E.2d 1053. The appeals were consolidated and have been briefed and argued.

## II. Analysis

{¶ 9} We begin by noting that this court may reverse a decision of the Unemployment Compensation Review Commission only if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H); *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph one of the syllabus.

### A. The Conflict Cases

{¶ 10} In *Mathieu v. Dudley*, 10 Ohio App.2d 169, 39 O.O.2d 332, 226 N.E.2d 763, an employer enacted a mandatory retirement plan a number of years after the employee was hired. The employee had misstated her age at the time she was hired. When the employer learned of the misstatement, it gave the employee a choice between immediate termination and termination without retirement benefits when she reached the age of 65. The employee chose the latter, continued to work until she reached the age of 65, and was then terminated pursuant to company policy. The appellate court held that the employee was eligible for unemployment-compensation benefits because she did not quit within the meaning of R.C. 4141.29(D)(2)(a) as enacted at that time. The

court explained that "the basic eligibility for unemployment benefits depends upon the establishment of an 'employment' relationship followed by 'involuntary employment.' The fact that the unemployment is the result of the expiration of a contract for employment is irrelevant." (Citations omitted.) Id. at 174, 39 O.O.2d 332, 226 N.E.2d 763.

{¶ 11} In *Lexington Twp. Trustees v. Stewart*, Stark App. No. CA–6766, 1986 WL 3925, the employee had a six-month contract. The employee's last scheduled day of work was one week before the contract's termination date. The employer argued that the termination was a direct result of the employee's voluntary agreement, and that for the purposes of unemployment benefits, the employee should be considered an independent contractor. Because there was work available to the employee at the beginning of the contract, and there was a lack of work at its end, the appellate court affirmed the finding of the Unemployment Compensation Board of Review. The appellate court held that the employee was not an independent contractor and that the contract length was among the terms unilaterally presented by the employer. It held that the contract did not affect the employee's eligibility for unemployment-compensation benefits.

{¶ 12} In *Case W. Res. Univ. v. Ohio Unemp. Comp. Rev. Comm.*, Cuyahoga App. No. 81773, 2003-Ohio-2047, 2003 WL 1924645, the employee was discharged at the end of a nine-month contract. The employer reported that there was no work available for the employee. The appellate court relied on *Mathieu* and *Lexington* to argue that eligibility for unemployment benefits depended on establishing an employment relationship followed by involuntary unemployment and that the expiration of an employment contract is irrelevant. The appellate court explained that there is a presumption that the separation was for lack of work, which could be rebutted by testimony that the employer had work but that the employee left voluntarily. The employer did not rebut this presumption, and the court held that the employee was eligible for unemployment benefits.

## B. The Statutory Regime

{¶ 13} Several statutes indicate the importance of the unemployment-compensation system. R.C. 4141.32 prohibits any attempt to contractually or otherwise waive the right to benefits and states that benefits are exempt from all claims of creditors and from levy, execution, garnishment, or attachment. R.C. 4141.46 mandates that R.C. Chapter 4141 "shall be liberally construed."

{¶ 14} R.C. 4141.29 establishes the criteria for unemployment compensation benefits. Benefits are compensation for a "loss of remuneration due to involuntary total or partial unemployment." R.C. 4141.29. An employee meets the definition of total unemployment for a given week if she performs no services and is due no payment. R.C. 4141.01(M).

{¶ 15} An employee may not be eligible for benefits under certain circumstances. First, there are several statutory exceptions. An employee may be found ineligible for benefits if the employee has quit without just cause, or if the employer discharged the employee for just cause in connection with the employee's work. R.C. 4141.29(D)(2)(a). With specific concern for intermittent employees, an additional restriction on eligibility for employees of academic institutions is contained in R.C. 4141.29(I), which limits eligibility for employees in the periods between academic terms.

{¶ 16} Second, the common-law exception to eligibility for benefits is specific to union-represented employees. When an employee has a termination package pursuant to a collective-bargaining agreement between her union and the employer, the employee is deemed to have accepted the benefits of the package, and waived her right to benefits, in return for her agreement to be terminated at a certain time. *Ivy v. Dudley* (1966), 6 Ohio St.2d 261, 35 O.O.2d 423, 217 N.E.2d 875; see, also, *Salzl v. Gibson Greeting Cards, Inc.* (1980), 61 Ohio St.2d 35, 15 O.O.3d 49, 399 N.E.2d 76. The termination when a collective-bargaining agreement exists is deemed to have been for just cause, rendering the employee statutorily ineligible for unemployment compensation. *Ivy,* 6 Ohio St.2d at 262, 35 O.O.2d 423, 217 N.E.2d 875.

{¶ 17} One rationale for this exception is that union-supported employees are in a protected class and are afforded more bargaining power through the union. *Salzl,* 61 Ohio St.2d at 38, 15 O.O.3d 49, 399 N.E.2d 76. Employees who do not have the protection of union bargaining are not subject to this exception and are unable to waive their rights to unemployment benefits even if they agree to be discharged at a certain time.

{¶ 18} This court has rejected the expansion of this narrow common-law exception when lower courts have erroneously applied the law applicable to collective-bargaining agreements to find an employee ineligible for benefits under R.C. 4141.29. In *May Dept. Stores Co. v. Ohio Bur. of Emp. Servs. Bd. of Rev.* (1975), 49 Ohio App.2d 21, 3 O.O.3d 100, 358 N.E.2d 1389, the appellate court concluded that an employee, regardless of union involvement, was terminated for just cause when he had agreed to compulsory termination as a condition of employment.

{¶ 19} We disagreed with this conclusion and differentiated between a collective-bargaining agreement and an employee's acquiescence to a unilaterally imposed retirement plan in *Salzl,* 61 Ohio St.2d at 37–38, 15 O.O.3d 49, 399 N.E.2d 76. In stating that the purpose of R.C. Chapter 4141 is "to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own," id. at 39, 15 O.O.3d 49, 399 N.E.2d 76, this court was referring only to an agreement reached by collective bargaining, not to an employee's acquiescence

to an employer's unilateral policy, where the alternative was immediate unemployment. Thus, for the purposes of eligibility for unemployment benefits, an employee's acquiescence to a unilaterally imposed policy setting a retirement age does not equate to a discharge for just cause, nor does it trigger voluntary unemployment, as described in R.C. 4141.29(D)(2)(a).

{¶ 20} This court recognizes that the purpose of R.C. Chapter 4141 is to protect employees from economic adversity. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d at 697, 653 N.E.2d 1207. An employer's ability to plan for such economic adversity does not and should not detract from an employee's rights to this protection.

{¶ 21} Thus, although it may be a prudent economic decision for an employer to plan to terminate an employee (be it one day in advance, or years in advance), the employee is no less eligible for unemployment benefits. Id. (stating that "while a termination based upon an employer's economic necessity may be *justifiable*, it is not a *just cause* termination when viewed through the lens of the legislative purpose of the Act." (Emphasis sic.)

{¶ 22} In the present case, Brinkman agreed to work for Lorain under an agreement characterizing her as an "intermittent employee," or one usually working fewer than 1,000 hours per year. Brinkman was not supported by a union, and her agreement to the contract did not endow her with much, if any, bargaining power. Her agreement was subject to the R.C. 4141.32 rule against the waiver of benefits. Her agreement did not cause her to be voluntarily unemployed.

{¶ 23} The facts of Brinkman's case are also distinguishable from *Univ. of Toledo v. Heiny* (1987), 30 Ohio St.3d 143, 30 OBR 454, 507 N.E.2d 1130, which focused exclusively on the rights and exceptions given to employees of educational institutions under R.C. 4141.29(I). Under subsection (I), unemployment benefits are specifically not to be given to employees during the period between academic terms. R.C. 4141.29(I)(1)(a). This "vacation" exception is not used in R.C. 4141.29 outside of subsection (I).

{¶ 24} In construing the applicability of these sections to other circumstances, we are mindful that the intent of the statute is determined by the words used, and that words may not be inserted in or deleted from a plainly worded statute. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217; *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77. There is simply no statutory or common-law exception that makes Brinkman ineligible to receive benefits under the plain language of R.C. 4141.29.

{¶ 25} The lower court asserts that the grant of benefits to Brinkman was unlawful and unreasonable because she was not discharged: she was removed

from the work schedule but not removed from the payroll. The failure to schedule Brinkman for work was not due to lack of work or lack of funds.

{¶ 26} There is no statutory requirement that Brinkman be "terminated, * * * separated, [or] laid off" in order to receive benefits. 2005-Ohio-5807, 2005 WL 2861535, ¶ 15. R.C. 4141.29 requires that an individual be involuntarily unemployed before receiving unemployment benefits, and subsection (D)(2)(a) makes an employee who is discharged for just cause ineligible for benefits.

{¶ 27} Although we stated in *Tzangas, Plakas & Mannos* that an employee is not eligible for benefits if he has "quit work without just cause or has been discharged for just cause in connection with [his] work," R.C. 4141.29(D)(2)(a), it appears that the lower court in this case has taken that instruction to an illogical extreme. If an employee is unemployed, that is, not working and not getting paid, but has not been discharged, the employee is placed in an untenable limbo.

{¶ 28} Once Brinkman was removed from the work schedule, she was not able to perform any services for the county or to receive payment, and thus satisfied the statutory definition of "total unemployment" as described in R.C. 4141.01(M). Because Lorain caused Brinkman to be unemployed as provided in R.C. 4141.01(M), and none of the circumstances described in R.C. 4141.29(D)(2)(a) are applicable, Brinkman is eligible for unemployment-compensation benefits. A formal discharge is not required for a successful claim for unemployment benefits.

{¶ 29} The appellate court in this case adhered to the public policy of a business's freedom to contract by creating an additional opportunity for an employee to contract away his eligibility for unemployment compensation. The remedial purpose of R.C. 4141.29 focuses on the protection of the employee, not the employer. By limiting the possibility of a unilateral employer limitation on an employee's statutory rights, as the courts did in *Mathieu, Lexington Twp. Trustees,* and *Case W. Res. Univ.,* the policy of the Act is fully supported.

{¶ 30} An employee who accepts employment and agrees to a termination date does not waive her right to unemployment benefits. More specifically, the employee has not agreed to become voluntarily unemployed or to be discharged with just cause, unless an explicit exception is applicable. For purposes of eligibility for unemployment benefits, an employee who has worked the maximum number of hours under an intermittent-employment contract is not discharged for just cause and does not become voluntarily unemployed as described in R.C. 4141.29(D)(2)(a).

{¶ 31} The protections of an employee under R.C. 4141.29 are to be liberally construed. Thus, the exceptions to R.C. 4141.29 should be narrowly construed. The exceptions to the bar on waiver (such as union-contract and educational-institution employees) do not specifically apply to the employee in this case and should not be analogized to apply to the employee in this case.

{¶ 32} For the foregoing reasons, the decision of the commission was lawful and supported by competent, credible evidence. The judgment of the court of appeals is therefore in error.

Judgment reversed.

PFEIFER, O'DONNELL and LANZINGER, JJ., concur.

MOYER, C.J., BRESSLER and LUNDBERG STRATTON, JJ., dissent.

H.J. BRESSLER, J., of the Twelfth Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

---

**BRESSLER, J., dissenting.**

{¶ 33} I agree with the majority's affirmative answer to the question certified in this case and its conclusion that a claimant is entitled to unemployment compensation benefits when the claimant is an intermittent employee who has satisfied the terms of the employment contract. However, I disagree with the majority's application of this statement of law to the facts of this particular case and believe that the terms of Brinkman's employment contract compel us to dismiss this appeal as having been improvidently accepted.

{¶ 34} Our purpose in interpreting contracts is to ascertain and effectuate the intent of the parties, and "[t]he intent of the parties is presumed to reside in the language they chose to use in their agreement." *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. "If a contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; instead, the court must give effect to the agreement's express terms." *Uebelacker v. Cincom Sys., Inc.* (1988), 48 Ohio App.3d 268, 271, 549 N.E.2d 1210.

{¶ 35} The contract between Brinkman and Lorain provides:

{¶ 36} "I, Kristie Brinkman, the undersigned, do hereby understand and agree to abide by the following rules pertaining to Intermittent Employees:

{¶ 37} "1. My appointment as REGISTERED NURSE is classified as Intermittent. An intermittent employee is defined by Rule # 123:1-47-01(44) of the Ohio Civil Service Laws and Rules as: An employee who works an irregular

schedule which is determined by fluctuating demands of the work and is not predictable and is generally characterized as requiring less than 1000 hours per year.

{¶ 38} " * * *

{¶ 39} "3. I must complete a probationary period of 2000 hours worked."

{¶ 40} The majority holds that "satisfaction of an intermittent-employment contract does not create voluntary unemployment or a discharge sufficient to render an employee ineligible for unemployment benefits." In concluding that Brinkman is entitled to unemployment-compensation benefits, the majority implicitly holds that Brinkman had satisfied the terms of her intermittent-employment contract.

{¶ 41} Brinkman's intermittent-employee contract provided, as an express condition to her employment, that she was required to work 2,000 hours during a probationary period that began in October 2001. However, the contract clearly limits Brinkman to working 1,000 hours per year or less, meaning that Brinkman's contract is a multiyear contract that cannot be completed in less than one year. Therefore, Brinkman could not have satisfied her intermittent-employee contract as of the date she applied for and received unemployment benefits, because she had not yet worked 2,000 hours. Brinkman began her probationary period in October 2001, which was Lorain's fiscal-year 2001, and worked until November 2002, after she had accumulated 1,000 hours during Lorain's fiscal-year 2002. Brinkman then resumed her duties in December 2002, which was the beginning of Lorain's fiscal-year 2003, and became a permanent part-time employee in June 2003, thereby completing her 2,000–hour probationary period. Accordingly, Brinkman did not satisfy her intermittent-employee contract after working 1,000 hours during Lorain's fiscal-year 2002. Rather, she satisfied her contract after completing her 2,000–hour probationary period, which lasted approximately 21 months.

{¶ 42} Moreover, Brinkman received exactly as much compensation as she expected to receive pursuant to the contract, albeit in a shorter period of time than she apparently desired. Had Lorain simply scheduled Brinkman to work no more than approximately 20 hours per week for an entire year, Brinkman certainly would have no claim for unemployment-compensation benefits. However, such a schedule obviates the need for an intermittent employee, which by definition is an employee who works an irregular and unpredictable schedule.

{¶ 43} I do not believe that Brinkman was involuntarily unemployed at any time during her 21–month probationary period. While I do believe that a claimant who has satisfied an intermittent-employee contract is not voluntarily unemployed or discharged, I do not believe that Brinkman satisfied the terms of

her intermittent-employee contract before she completed her probationary period. Therefore, I respectfully dissent.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing opinion.

------

Dennis P. Will, Lorain County Prosecuting Attorney, and M. Robert Flanagan, Assistant Prosecuting Attorney, for appellees, Lorain County Auditor and Lorain County Sheriff.

Marc Dann, Attorney General, Stephen P. Carney, State Solicitor, and David E. Lefton, Senior Assistant Attorney General, for appellant.

Frederick M. Gittes, urging reversal for amicus curiae Ohio Employment Lawyers Association.

Anita L. Myerson, urging reversal for amicus curiae Legal Aid Society of Cleveland.

Thomas W. Weeks, urging reversal for amici curiae Ohio State Legal Services Association, Legal Aid Society of Cleveland, National Employment Law Project, and Ohio Employment Lawyers Association.