[Cite as *Mitchell v. Dir., Ohio Dept. of Children & Family Servs.*, 2014-Ohio-3819.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 100702

---

# KEVIN MITCHELL

### PLAINTIFF-APPELLANT

vs.

# DIRECTOR, OHIO DEPARTMENT OF CHILDREN AND FAMILY SERVICES, ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-779883

**BEFORE:** Celebrezze, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 4, 2014

**ATTORNEYS FOR APPELLANT**

Kenneth J. Kowalski
Doron M. Kalir
Cleveland Marshall College of Law
2121 Euclid Avenue LB 138
Cleveland, Ohio   44115


**ATTORNEYS FOR APPELLEES**

**For Ohio Department of Children and Family Services**

Mike DeWine
Ohio Attorney General
30 East Broad Street
17th Floor
Columbus, Ohio   43215

Patrick MacQueeney
Assistant Ohio Attorney General
Ohio Attorney General's Office
615 West Superior Avenue
11th Floor
Cleveland, Ohio   44113

**For Cuyahoga Metropolitan Housing Authority**

Bronius K. Taoras
Cuyahoga Metropolitan Housing Authority
1441 West 25th Street
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** Appellant, Kevin Mitchell, challenges the decision in an administrative appeal that affirmed the decision of the Ohio Department of Job and Family Services ("ODJFS") denying him unemployment benefits. Mitchell argues that the decision is erroneous as a matter of law and that a previous common pleas appeal is determinative of the issue. After a thorough review of the record and law, we affirm the decision of the common pleas court denying Mitchell unemployment compensation benefits.

## I. Factual and Procedural History

**{¶2}** Mitchell worked for the Cuyahoga Metropolitan Housing Authority ("CMHA") for over 20 years. During that time, he had little disciplinary history until 2008 when he was going through a custody dispute. He took a cell phone call during work hours and refused to terminate the call when instructed. The incident escalated and ultimately Mitchell was terminated. He appealed his termination through his union grievance process. The dispute was settled through arbitration. The arbitrator found that Mitchell was properly subject to discipline for his conduct, but that termination was not warranted. The arbitrator modified the CMHA's disciplinary action to a 30-day suspension.

**{¶3}** Mitchell returned to work early in 2010. He was assigned to work under the Asset Managed Property ("AMP") Leader, Deborah Goolsby. He was directly supervised by Ronald King, who reported to Goolsby. Mitchell was also named a union

steward on his return. Goolsby and King described a pattern of behavior best classified as disruptive and insubordinate from the moment Mitchell returned to work.[1]

{¶4} Mitchell's conduct became the subject of an anonymous complaint from a resident of one of CMHA's properties. On March 31, 2010, a call was received at a CMHA office that was directed to King. A resident informed him that a CMHA employee was using profanity on the grounds of a CMHA property and creating a disturbance near the corner of Washington Avenue. King walked to the area and observed Mitchell pacing back and forth and loudly using obscene language while on a cell phone. King instructed Mitchell to calm down, which he did. Later, Mitchell informed King and Goolsby that he was being threatened by the president of the union because Mitchell was running against him. Mitchell called the police to report that the union president had threatened his life and the life of his family. Goolsby asked CMHA police to respond, but Mitchell wanted the matter handled by Cleveland police, so he refused CMHA police assistance and waited for Cleveland police to respond. Goolsby sent a narrative of the incident to the human resources department, as she had done with past instances of misconduct. Mitchell explained the incident by stating he was simply repeating what the union president was saying to him over the phone.

{¶5} A disciplinary hearing was conducted as a result of this and other alleged instances of improper behavior. The hearing resulted in Mitchell's termination on April

[1]However, many of these instances were rebutted by Mitchell's recordings of meetings and the testimony of Damita Phillips, a fellow employee of CMHA called by Mitchell. She indicated Mitchell was not disruptive in meetings and was not disrespectful to supervisors in her presence.

13, 2010. He attempted to have the decision reversed in proceedings through his union, but was unsuccessful. On August 18, 2010, Mitchell applied for unemployment benefits. Hearings were conducted on March 29, 2011 and April 19, 2011. The hearing officer issued a decision on May 2, 2011, denying benefits. The hearing officer found that Mitchell was terminated for cause.

{¶6} Mitchell appealed the decision to the common pleas court after the unemployment compensation review commission declined review. The court reviewed the administrative record and found the hearing flawed. The court's November 29, 2011 decision indicated that claimed instances of boisterous conduct during meetings were contradicted by recordings of those meetings introduced by Mitchell. The court found that the record before it

> is replete with inconsistencies concerning the conduct for which [Mitchell] was terminated. It appears that unsubstantiated statements from non-testifying individuals were accorded substantial weight while recordings of proceedings were disregarded. Additionally, other witnesses were excluded entirely.
>
> The court finds that the decision of the Review Commission is not supported by the evidence in the record and was against the manifest weight of the evidence currently in the record.

{¶7} The matter was remanded for a new hearing, which was conducted on February 6, 2012 and February 27, 2012, by a different hearing officer. There, Mitchell's witnesses who were previously excluded were allowed to testify. A representative from CMHA's human resources department also added new testimony.

The hearing officer mailed his decision on March 12, 2012.[2] He found that CMHA had not established that Mitchell was disruptive or "boisterous" in the instances where Goolsby claimed Mitchell disrupted meetings. The hearing officer did determine that Mitchell was terminated for cause based on the use of loud profanity during the March 29, 2010 incident. Because the incident of prior discipline involved similar conduct, the hearing officer determined Mitchell "knew or should have known that loudly using profanity in one of the employer's housing complexes would not be tolerated and could lead to discharge." The hearing officer determined that Mitchell's excuse of merely repeating the threats and profanity that were being relayed to him by the union president did not excuse his behavior.

{¶8} Mitchell again appealed the decision to the common pleas court. He argued that the decision of the hearing officer was unlawful, unreasonable, and against the manifest weight of the evidence. He also argued that a single instance of profanity was not just cause for termination as a matter of law. After a review of the administrative record, the common pleas court, on November 4, 2013, affirmed the decision reached below, finding the decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

{¶9} Appellant then appealed from this determination to this court assigning two errors for review:

---

[2] The decision indicates it was issued May 2, 2011, but this date is clearly erroneous.

I. The evidence presented at the second UCRC hearing should have resulted in a decision favoring the claimant under the law-of-the-case doctrine.

II. The second UCRC's finding that Appellant's single instance of repeating another employee's profane death threats constitutes "just cause" for termination is erroneous as a matter of law.

## II. Law and Analysis

### A. Law of the Case

{¶10} Appellant first argues that the decision that resulted from the first appeal to the common pleas court should preclude any other result than an award of benefits because of the law-of-the-case doctrine.

> "Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.
>
> "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.
>
> "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. Moreover, the trial court is without authority to extend or vary the mandate given."

*State ex rel. Cleveland v. Astrab*, 139 Ohio St.3d 445, 2014-Ohio-2380, ¶ 21, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3-4, 462 N.E.2d 410 (1984).

**{¶11}** However, appellant never argued this below at the commission rehearing or at the second common pleas court appeal. This new issue raised for the first time on appeal could have been raised below at varying points and was not. Therefore, this court will not address it for the first time on appeal. *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus.

### B. Termination for Use of Profanity

**{¶12}** A party dissatisfied with the ultimate decision of the Unemployment Compensation Board of Review may appeal that decision to the appropriate court of common pleas, which shall hear the appeal solely on the record certified by the board of review. R.C. 4141.282; *Wigest Corp. v. Todd*, 6th Dist. Lucas No. L-96-327, 1997 Ohio App. LEXIS 1265 (Apr. 4, 1997). Pursuant to the statute, the common pleas court may reverse the decision of the board only if the decision is unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.282(H). Absent one of these findings, the trial court must affirm the board's decision. *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.*, 73 Ohio St.3d 694, 653 N.E.2d 1207 (1995). The *Tzangas* court noted further that an appellate court may not make factual findings or determine the credibility of witnesses. *Id*. at 696-697.

**{¶13}** Rather, factual determinations are the exclusive province of the hearing officer and the board of review. *Hall v. Am. Brake Shoe Co.*, 13 Ohio St.2d 11, 14, 233 N.E.2d 582 (1968); *Brown-Brockmeyer Co. v. Roach*, 148 Ohio St. 511, 76 N.E.2d 79 (1947). An appellate court may not weigh the evidence and substitute its judgment for

that of the administrative hearing officer in factual determinations. *Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 45, 430 N.E.2d 468 (1982). Determinations that are supported by some competent, credible evidence will not be reversed as against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶14} The Ohio Supreme Court has recognized that "the purpose of R.C. Chapter 4141 is to protect employees from economic adversity." *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.,* 113 Ohio St.3d 124, 2007-Ohio-1247, 863 N.E.2d 133, ¶ 20, citing *Tzangas*. So, in order to be eligible for unemployment compensation benefits in Ohio, a claimant must satisfy the criteria set forth in R.C. 4141.29(D)(2)(a), which provides in part that "[no] individual may * * * be paid benefits * * * [f]or the duration of the individual's unemployment if the administrator finds that * * * [t]he individual quit his work without just cause or has been discharged for just cause in connection with the individual's work * * *."

{¶15} Mitchell argues that this case is one involving a single, isolated instance of objectionable conduct. In that context, he cites to case law involving employees terminated for a single instance of profanity. Specifically, Mitchell applies the factors annunciated in *Lombardo v. Ohio Bur. of Emp. Servs.*, 119 Ohio App.3d 217, 695 N.E.2d 11 (6th Dist.1997).

{¶16} In that case, an employee was terminated for a single instance of using profanity in the workplace. After an analysis of over a dozen Ohio cases dealing with

termination involving the use of profanity, the *Lombardo* court affirmed that the termination was not for cause. It set out a list of factors it used to arrive at that conclusion: "1) the severity of the language used, 2) whether the language was an isolated incident or part of a pattern of behavior, 3) whether other employees were present, and 4) whether there was provocation for the outburst." *Id.* at 221, citing *Hepner v. Bd. of Rev.*, 8th Dist. Cuyahoga No. 37592, 1978 Ohio App. LEXIS 10014 (July 20, 1978), and *Wilson v. Unemp. Comp. Bd. of Rev.*, 14 Ohio App.3d 309, 471 N.E.2d 168 (8th Dist.1984). But the *Lombardo* court noted the employer's argument that termination was justified because the use of profanity violated a work rule and opined that

> [t]his might be persuasive had [the employee's] position on [the employer's] progressive discipline ladder been near the point where severe discipline was warranted. Here, however, the employer's Director of Human Resources testified that [the employee] had a relatively unblemished record and was nowhere near discharge on the progressive disciplinary scale.

*Lombardo* at 223.

{¶17} The first factor set forth in *Lombardo* is the type of language used. Here, that language was vulgar and can be classified as severe.

{¶18} Second, Mitchell's conduct was also not an isolated incident, but a pattern of continuing conduct for which he was previously suspended for 30 days. The reason justifying Mitchell's termination for cause was not an isolated incident. Mitchell returned to work in February 2010, according to his testimony. This was following a termination that was converted to a 30-day suspension for similar conduct. Less than two months after his return, he was observed cursing loudly on CMHA property by King.

Mitchell admitted to using such language. The hearing officer found that the other instances of improper conduct used by Mitchell's employer to justify termination were unsubstantiated, and that decision is not under attack in the instant appeal. However, Mitchell's attempts at isolating an instance of improper conduct fails in light of prior discipline for similar conduct. This also distinguishes this case from others involving only a single instance of a violation of a workplace policy as recognized in *Lombardo*. Mitchell was at the end of his employer's progressive disciplinary policy and, as the hearing officer determined, knew or should have known that loudly using profanity while at work could result in disciplinary action.

{¶19} The third factor concerns to whom the profanity is directed or by whom it is heard. It is true that other employees were not present but, according to King, a resident — a customer of Mitchell's employer — heard the outburst and complained. This factor does not weigh against disciplinary action as Mitchell claims.

{¶20} Finally, there was provocation for the language used according to Mitchell. Mitchell was repeating the threats to life and family made by another CMHA employee, and Mitchell produced police reports indicating he reported the threats to authorities. But his excuse for this conduct is inadequate given the other factors set forth above. He argues that he was merely repeating the words used by his union president, which threatened his life and the life of his family. Mitchell could not control what was said on the other end of the phone call, but he was responsible for his side of this conversation.

He was in his place of work and created a disturbance that resulted in a complaint from a resident.

{¶21} Here, we are not faced with a single instance of profanity used to justify termination. We are concerned with a prior disciplinary history of a 30-day suspension and another instance of the loud use of profanity within a few months of returning to work. The hearing officer's weighing of these factors to arrive at the conclusion that Mitchell was terminated for cause is supported by competent, credible evidence, as is the common pleas court's decision to affirm that finding.

{¶22} Mitchell also argues the policy was not evenly applied and cites mainly to the use of profanity by Goolsby in a meeting. These rather tame uses of profanity are not similar in degree to that used by Mitchell when he created a disturbance for at least one resident. The other instances where employees were disciplined for using profanity, introduced during the testimony of former union president David Patterson, demonstrate that CMHA enforced its policy regarding profanity. This contrasts with the employer cited by Mitchell in *Apex Paper Box Co. v. Admr., Ohio Bur. of Emp. Servs.*, 8th Dist. Cuyahoga No. 77423, 2000 Ohio App. LEXIS 2038 (May 11, 2000).

{¶23} There, this court held that "[w]hen the reason for discharge is a policy violation, the reason can only constitute just cause if the policy was fair and was fairly applied." *Id*. at *4-5, citing *Shaffer v. Am. Sickle Cell Anemia Assn.*, 8th Dist. Cuyahoga No. 50127, 1986 Ohio App. LEXIS 7116 (June 12, 1986); *Eagle-Pitcher Indus., Inc. v. Ohio Bur. of Emp. Servs.*, 65 Ohio App.3d 548, 550-551, 584 N.E.2d 1245 (3d

Dist.1989). This court affirmed the award of unemployment benefits where an employer fired an individual for time clock violations where that policy was not enforced and no other instances of enforcement of the policy were set forth in the record. *Id*. at *6. Here, testimony establishes that CMHA disciplined employees for using profanity in the workplace. While Goolsby was not disciplined for the use of minor profanity, such as "damn," other employees were disciplined for more severe uses of profanity, and therefore the common pleas court's decision on this issue is supported by some competent, credible evidence.

**{¶24}** The common pleas court's decision to affirm the commission's decision is supported by competent, credible evidence and will not be disturbed on appeal.

**{¶25}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

PATRICIA A. BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR