DUDLEY, ADMR., BUREAU OF UNEMPLOYMENT COMPENSATION, APPELLANT, *v.* MORRIS ET AL., APPELLEES.

188

(No. 8200—Decided May 31, 1966.)

Mr. *William B. Saxbe,* attorney general, and *Mr. Bernard L. Heffernan,* for appellant.

Mr. *William B. Saxbe,* attorney general, and *Mr. C. Richard Gregg,* for appellee Board of Review, Bureau of Unemployment Compensation.

DUFFEY, J.   This is an appeal from a judgment of the Common Pleas Court of Franklin County upholding the denial of unemployment compensation to Robert L. Morris.  The appellant is the Administrator of the Bureau of Unemployment Compensation.  He had originally determined that Morris was eligible.  This determination was reversed by a referee, who was upheld by the Board of Review.  The Common Pleas Court affirmed the Board of Review.

Morris was employed by Lennox Industries, Inc., on December 16, 1963.  He worked for six and one-half months.  The plant was shut down from June 26 to July 13, 1964.  Morris was unemployed during that period and received no pay.  Previous to Morris' employment, Lennox had entered into a collective bargaining contract with Lennox Employees Association Independent Union of Columbus, Ohio.  The contract provided for certain vacation and vacation pay rights.  The contract also provided that the "usual" vacation period would be the last week of June and the first week of July, with the company retaining the right to determine the period.  However, under the contract, the right of an employee to vacation time off varied from none to one week, two weeks or three weeks, depending upon length of service.  The right to and amount of pay during vacation also varied with length of service.  The so-called vacation shutdown for 1964 was the period of June 26 to July 13.

Under the terms of Article XII of the labor contract, Mor-

ris was not entitled to either time off or to remuneration during the shutdown period.

The parties have assumed that the union represented Morris. With the exception of a union security provision in the contract there is nothing in the record to indicate that Morris had joined the union and authorized it to act for him, or ratified the collective bargaining contract. However, in view of the union security provision and the fact that from the early stages of this litigation all parties assumed Morris' representation by the union, this court will also so assume.

Section 4141.29, Revised Code, as pertinent here, provides:

"Each eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in Sections 4141.01 to 4141.46, inclusive, of the Revised Code."

It is the position of the referee, the Board of Review, the Common Pleas Court, appellee, and *amicus curiae*, counsel for Chrysler Corporation, that Morris' layoff was not "involuntary" unemployment within the meaning of the quoted provision of Section 4141.29, Revised Code. It is argued that since the union contract agreed, in effect, to a two-week plant shutdown, which was to coincide with the majority of employees' vacation time off, in whole or in part, Morris himself should be held to have so agreed, and that, he having agreed to the shutdown, unemployment was voluntary rather than "involuntary" as used in the statute.

Before discussing this question, several premises which are implicit in this case should be pointed out. All parties have, in effect, conceded that Morris suffered "unemployment" and was "totally unemployed" within the meaning of Section 4141.01 (M), Revised Code. Morris' position is, therefore, quite distinguishable from that of the claimants in *Reid* v. *Bd. of Review* (1951), 155 Ohio St. 6, and *Nunamaker* v. *U. S. Steel Corp.* (1965), 2 Ohio St. 2d 55. It is also clear that Morris did not "quit" work nor has he been "discharged" within the meaning of Section 4141.29 (D), Revised Code. Compare *Marcum* v. *Ohio Match Co.* (1965), 4 Ohio App. 2d 95.

Morris' layoff was no vacation as to him. He had no contractual right to any time off whatsoever with or without pay,

and he did not request any time off. On the record, he was clearly available for work at Lennox or elsewhere, and he wanted to work, but he could not find work. It is, therefore, very clear that Morris' unemployment was involuntary *at the time of his layoff* in that on this record he must be considered at that time as being desirous of continuing to work and being required by an employer to cease work.

It should be noted that Morris' layoff is quite distinguishable from that of most other employees of Lennox during the period from June 26 to July 13. Many of them were entitled to time off, and were personally desirous of taking some or all of it during that period.

The issue in this case is thus whether Morris' unemployment, even though involuntary on his part at the time of his layoff, should be held not involuntary because of the provisions of the union agreement. The contention is well summarized in the *amicus curiae* reply brief:

"The claimant's duly constituted representative had negotiated terms and conditions of employment at Lennox Industries, Inc. One of them was an agreement by the employees that the company could shut down its plant for vacation purposes. "* * *

"Morris is just as subject to the terms and provisions of the union contract covering his employment as though he had sat at the bargaining table and entered into the agreement personally. Through his agents he had agreed to the plant shutdown. His unemployment during such a period is not involuntary."

In our opinion, the word "involuntary" as used in Section 4141.29, Revised Code, refers to unemployment which is involuntary at the time of layoff. An agreement for a future layoff is immaterial and irrelevant to a determination of the involuntary character of unemployment at the time of layoff except as it may be evidence of the employee's willingness to then take time off.

If unemployment compensation is to accomplish its purposes, the right to benefits cannot depend upon a contractual right of an employee to be employed. It takes no historian to recognize that in many industries the economic disparity between the employer and an individual employee or job seeker

is so great that bargaining would be one-sided. In many instances, it would indeed be a farce. The ability of an employer to refuse to agree to long-term employment, or, having agreed, to extract a waiver or release of statutory benefits, is an obvious problem.

Section 4141.32, Revised Code, prohibits all agreements between an employer and an employee to waive or release the employee's statutory rights to compensation. Without this prohibition, the entire compensation program would be undermined. The statute in its present form draws no distinction between such an agreement made directly by the employee and one made on his behalf by his agent, be that agent a union or an individual. Specifically, the statute contains no exception for agreements to waive or release made by a labor union, whether separately or as part of a collective bargaining contract.

To hold that unemployment which is involuntary at the time of layoff can be considered to be voluntary because of a previous agreement by the individual employee would be to undermine the statutory prohibition on agreements to waive or release, and therefore the entire unemployment compensation program. It would be a disingenuous method of legalizing waivers or releases. If we were to accept appellee's interpretation of "involuntary" as used in Section 4141.29, Revised Code, we would be forced to conclude that an individual employee's agreement to accept a future layoff operates as, and therefore constitutes, an agreement to waive rights within the meaning of Section 4141.32, Revised Code. Since the statutes do not distinguish such an agreement when made by a union on behalf of the employee, the same conclusion would follow as to the union's agreement to future layoffs.

We prefer to take the position that the involuntary character of the layoff is determined by whether at the time of layoff the employee wishes to cease working. If it is involuntary at that time and the layoff meets the other requirements for a compensatory layoff and the compensation payable is not reduced by payments obtained from the employer, then in our opinion the statutory rights attach and the employee is entitled to claim the benefit of the Act.

Appellee has stressed the case of *Marcum* v. *Ohio Match Co.* (1965), 4 Ohio App. 2d 95. That case held that an employee

required to retire at age 65 under the terms of a collective bargaining agreement was "discharged for just cause" by his employer within the meaning of Section 4141.29 (D), Revised Code. It should be noted that the court considered the claimant's compulsory retirement to be a discharge and not a voluntary cessation of employment. Further, the court's conclusion was based upon a specific statutory exception to benefits, applicable regardless of the voluntary or involuntary character of the unemployment. It must again be pointed out that Morris did not "quit" nor was he "discharged."

It is true that in *Marcum* the claimant relied upon the prohibition against waiver or release. The court's terse comment appears to suggest that they considered the contract provision to be an agreement to waive benefits. See *Marcum v. Ohio Match Co.* (1965), 4 Ohio App. 2d 95, at 97. However, the court's observation was that "before one can waive rights under a statute, it must first be determined that one is entitled to those rights."

We express no opinion on the holding in *Marcum* that the claimant's retirement constituted a discharge for just cause. However, if that be assumed, then clearly no statutory right to benefits ever arose and no waiver occurred. The "just cause" clause of Section 4141.29 (D), Revised Code, creates a specific limitation on the right to statutory benefits. The principle of *Marcum* will apply to this case if and when the General Assembly adopts a provision that no employee can be paid benefits when there is an agreement by a union to layoffs or to explicit waiver of benefits. If such a provision were enacted, Morris' unemployment would not be compensable regardless of its involuntary character.

We fail to see how anything in *Marcum* can be considered as indicating that collective bargaining agreements are exempt from the prohibition of Section 4141.32, Revised Code. We fail to see how the interpretation of the "discharged for just cause" provision has any bearing on the interpretation of the "involuntary" requirement. We can find no logical basis in the present statutes to accord collective bargaining agreements any greater legal effect upon the "involuntary" character of a layoff than can be accorded an agreement by the individual em-

ployee himself. If that is to be legislated, it ought to be by the General Assembly and not this court.

The judgment of the Common Pleas Court will be reversed, and the cause will be remanded to the bureau with instructions to allow the claim and make payment of compensation.

*Judgment reversed.*

BRYANT, P. J., and DUFFY, J., concur.