**CONTINENTAL AIRLINES, INC., Appellee,**

**v.**

**DIR., OHIO DEPARTMENT OF JOB AND FAMILY SERVICES et al., Appellants.**

[Cite as *Continental Airlines, Inc. v. Ohio Dept. of Job & Family Servs.*, 173 Ohio App.3d 311, 2007-Ohio-5434.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 88698 and 88727

Decided Oct. 11, 2007.

Littler Mendelson, P.C., Janette M. Louard, and Lisa Anne Cottle, for appellee.

Marc Dann, Attorney General, and Patrick MacQueeney and Laurel Blum Mazorow, Assistant Attorneys General, for appellant, Director, Ohio Department of Job and Family Services.

Employment Law Clinic, Kenneth J. Kowalski, and Gordon J. Beggs, for appellant April A. Peters.

MELODY J. STEWART, Judge.

{¶ 1} Claimant-appellant April Peters and the director of the Ohio Department of Job and Family Services appeal from a court order that reversed an Unemployment Compensation Review Commission's determination awarding Peters unemployment-compensation benefits. Their assignments of error collectively challenge the court's finding that the commission's decision is contrary to the language of R.C. 4141.29 and the intent of the Unemployment Compensation Act, R.C. Chapter 4141. Specifically, appellants contend that the court erroneously

determined that the terms of a collective bargaining agreement between Peters's union, the International Association of Machinists and Aerospace Workers, and her employer, Continental Airlines, Inc., which mandated maternity leave following the 27th week of pregnancy, superseded the statutory requirements of R.C. 4141.29. We conclude that the collective bargaining agreement fell within the common-law exception to the prohibition of waiver of unemployment-compensation claims and that Peters was not involuntarily unemployed when forced to go on maternity leave. We therefore affirm.

## I

{¶ 2} The underlying facts are undisputed. Peters is a flight attendant employed by Continental. She became pregnant and, when she completed her 27th week of pregnancy on April 25, 2004, Continental placed her on maternity leave pursuant to the terms of the collective bargaining agreement between Continental and Peters's union.[1] The relevant provision of the collective bargaining agreement states:

{¶ 3} "3. Maternity and other pregnancy related conditions will be treated like any other disability. A flight attendant may continue to fly through the end of the 27th week of her pregnancy provided she is fit to perform her duties.

{¶ 4} "a. She will be placed on a maternity leave of absence. At the time of the birth of the baby, the flight attendant may, at her option, elect on a one time basis to extend the maternity leave up to twelve (12) months following her pregnancy.

{¶ 5} "b. A flight attendant on leave for maternity will continue to accrue seniority for all purposes until the later of either the end of the eighth (8th) week following the birth of her child or the first ninety (90) consecutive days of her leave.

{¶ 6} "c. A flight attendant on a maternity leave of absence will be eligible for sick leave benefits until eight (8) weeks following the date of delivery with verification from her doctor that she is unable to fly."[2]

---

1. It is unclear from the record whether Peters requested reassignment to light duty work. Continental's representative testified before the hearing officer that she and Peters did not have any discussion about Peters performing any other job for Continental. The representative stated, however, that Continental had no light duty work to offer Peters. The representative also testified that the collective bargaining agreement did not give Peters the right to apply for other jobs that were not restricted by pregnancy.

2. Although the collective bargaining agreement states that pregnancy will be treated like any other disability, the parties did not submit that part of the collective bargaining agreement, if any, relating to how Continental and the union agreed to treat a disability. We assume that the word "disability" is used for purposes of sick-leave eligibility.

{¶ 7} Peters filed a telephone application for unemployment-compensation benefits. A printout of that application shows a space labeled "Union Member in good standing" filled in with the word "NO" [3] and indicates that the claimant is on leave for maternity reasons. Peters also submitted a request-for-information form signed by her doctor, which stated the "nature of the ailment" as "pregnancy." The doctor indicated that Peters was able to work full-time and that the doctor had not advised Peters to quit employment. The doctor said that Peters should not work beyond July 24, 2004—presumably her expected delivery date.

{¶ 8} Continental opposed the application, stating that Federal Aviation Administration ("FAA") regulations forbid flight attendants from flying after their 27th week of pregnancy "in order to ensure the safety & health of mother & unborn child." [4] Continental said that Peters was expected to return "when able & available." The department made an initial determination allowing the claim:

{¶ 9} "Claimant was on a pregnancy leave of absence that is required in accordance with a company labor contract or policy. Information establishes that claimant has met the able, available, and actively seeking work requirements of the Ohio Unemployment Compensation Law."

{¶ 10} The director of the Department of Job and Family Services affirmed the initial determination.

{¶ 11} Continental appealed to the review commission. During a hearing on the appeal, a Continental representative stated that Continental did not discuss placing Peters on light duty for the remainder of her pregnancy because it had no such positions available. Peters acknowledged that she had been aware of the work rules prohibiting her from flying after she reached her 27th week of pregnancy because she had a prior pregnancy while working for Continental.

{¶ 12} The hearing officer first concluded that Peters had been unemployed due to a lack of work. The hearing officer found this separation to be involuntary.

{¶ 13} "The fact that the provision providing for the leave was a part of a labor-management agreement does not make it a [sic] voluntary on claimant's part. Furthermore, the provision of the labor-management agreement prohibit-

---

3. Throughout these proceedings, Peters has represented herself as a member in good standing with the union. Her negative answer to the question involving union membership is unexplained.

4. Peters points out that throughout the proceedings, Continental failed to produce any applicable FAA regulations. However, in questioning before the hearing officer for the unemployment-compensation review commission, Peters answered "yes" when asked if she was aware that the ban on flying after the 27th week of a pregnancy had been a requirement under FAA rules.

ing claimant from working beyond the twenty-seventh week of her pregnancy does not prohibit the employer from providing claimant with other work. Claimant was physically able to do other work. The Hearing Officer concludes that claimant was involuntarily unemployed from Continental Airlines after April 30, 2004, due to a lack of work. No duration suspension is imposed."

{¶ 14} The hearing officer next found that Peters met all of the unemployment-compensation-eligibility requirements by showing that she had been certified by her doctor as physically able to work and had actively, but unsuccessfully, sought to obtain suitable work. The hearing officer thus found that Peters met all the eligibility requirements.

{¶ 15} The commission disallowed Continental's request for further review.

{¶ 16} Continental appealed to the court of common pleas. The court reversed the commission, finding that Peters had been temporarily without employment because of the terms of the collective bargaining agreement that had been negotiated at arms length between Continental and the union. The court concluded:

{¶ 17} "The Review Commission's decision to allow unemployment benefits to Ms. Peters is contrary to the language of the statute and the intent of the Unemployment Compensation Act. The Unemployment Compensation Act is not intended for individuals who voluntarily agree to a period of partial unemployment, particularly when the individuals continue to accrue seniority, remain covered under the employer's insurance program, remain eligible for sick pay, and are able to return to their former job as soon as they are able."

## II

{¶ 18} In unemployment-compensation cases, we ordinarily apply the same standard of review as the lower court; we may reverse the commission's decision only if it is "unlawful, unreasonable, or against the manifest weight of the evidence." *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Servs.* (1995), 73 Ohio St.3d 694, 696–697, 653 N.E.2d 1207. An appellate court is not allowed to make factual findings or assess a witness's credibility. Id. at 696, 653 N.E.2d 1207; *Irvine v. Unemp. Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587.

{¶ 19} When the facts of a case are undisputed and the appeal involves the interpretation of a statutory provision, the question becomes one of a matter of law; hence, the court's action is not reviewed for an abuse of discretion. Instead, our review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835; *Fegatelli v.*

*Admr., Ohio Bur. of Emp. Servs.* (2001), 146 Ohio App.3d 275, 277, 765 N.E.2d 961.

### III

### A

{¶ 20} In *Leach v. Republic Steel Corp.* (1964), 176 Ohio St. 221, 223, 27 O.O.2d 122, 199 N.E.2d 3, the Supreme Court stated that the purpose of unemployment compensation is "to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day."

{¶ 21} The Unemployment Compensation Act, as codified in R.C. Chapter 4141, is "intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." *Salzl v. Gibson Greeting Cards* (1980), 61 Ohio St.2d 35, 39, 15 O.O.3d 49, 399 N.E.2d 76. R.C. Chapter 4141 is remedial in purpose and must be "liberally construed" in favor of the applicant. See R.C. 4141.46. While the law should be liberally construed in favor of the applicant's claim for benefits, it does not mean that the facts must be construed in the applicant's favor. See *Shephard v. Dir., Ohio Dept. of Job & Family Servs.*, 166 Ohio App.3d 747, 853 N.E.2d 335, 2006-Ohio-2313, at ¶ 21.

### B

{¶ 22} R.C. 4141.29 states that "[e]ach eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment in the amounts and subject to the conditions stipulated in this chapter." The parties agree that Peters satisfied most of the conditions of eligibility for benefits except whether she was "involuntarily" unemployed and whether she could waive the right to unemployment benefits through the collective bargaining agreement.

### C

{¶ 23} Peters argues that she was involuntarily unemployed, even though the terms of the collective bargaining agreement stated that a pregnant flight attendant could fly only through her 27th week of pregnancy. She maintained that she was willing and able to continue working as a flight attendant beyond her 27th week of pregnancy and that she could have physically performed some other form of employment; hence, she maintains that she had been involuntarily

unemployed. Continental argues that Peters's union membership voluntarily subjected her to all of the terms of the collective bargaining agreement, including the maternity policy.

{¶ 24} The only Ohio case factually on point is *Leach v. Columbus Plastics Prods., Inc.* (C.P.1963), 92 Ohio Law Abs. 212, 28 OO.2d 125, 194 N.E.2d 469. In *Columbus Plastics Prods.*, the Franklin County Court of Common Pleas held:

{¶ 25} An employee on leave of absence for pregnancy, during a period that such leave is mandatory under rules established pursuant to a collective bargaining agreement, is not entitled to unemployment compensation benefits since she is not "available for suitable work" as required by division (A)(4) of Section 4141.29, Revised Code.

{¶ 26} *Columbus Plastics Prods.* predated a line of cases in which the courts held that an employee whose employment ended at the expiration of a fixed-term contract was involuntarily unemployed and entitled to unemployment benefits. See, e.g., *Mathieu v. Dudley* (1967), 10 Ohio App.2d 169, 39 O.O.2d 332, 226 N.E.2d 763; *Lexington Twp. Trustees v. Stewart* (Mar. 17, 1986), Stark App. No. CA–6766, 1986 WL 3925; *Case W. Res. Univ. v. Ohio Unemp. Comp. Rev. Comm.*, Cuyahoga App. No. 81773, 2003-Ohio-2047, 2003 WL 1924645.

{¶ 27} In *Lorain Cty. Aud. v. Ohio Unemp. Comp. Rev. Comm.*, 113 Ohio St.3d 124, 863 N.E.2d 133, 2007-Ohio-1247, the Supreme Court agreed to decide whether "an intermittent-employment contract prevents an employee's eligibility for benefits under the Unemployment Compensation Act, R.C. Chapter 4141, once the employee is not scheduled for work." Id. at ¶ 1. The court held at paragraph one of the syllabus that a county worker, hired as an "intermittent employee" for a term not to exceed 1,000 hours in one fiscal year, was not discharged for just cause and had not been voluntarily unemployed for purposes of R.C. 4141.29(D)(2)(a) when the county removed her from the work schedule after she had worked 1,000 hours. The court reasoned:

{¶ 28} "An employee who accepts employment and agrees to a termination date does not waive her right to unemployment benefits. More specifically, the employee has not agreed to become voluntarily unemployed or to be discharged with just cause, unless an explicit exception is applicable." Id. at ¶ 30.

{¶ 29} The Supreme Court acknowledged that R.C. 4141.32 [5] "prohibits any attempt to contractually or otherwise waive the right to benefits." Id. at ¶ 13. Despite this rule against waiving the right to employment compensation, the court noted a "common-law" exception to the statutory waiver prohibition in cases

---

**5.** R.C. 4141.32(A) states, "No agreement by an employee to waive his right to benefits is valid, nor shall benefits be assigned, released, or commuted; * * *."

of benefits eligibility relating to union-represented employees. Id. at ¶ 16. The Supreme Court stated at ¶ 16–19:

{¶ 30} "When an employee has a termination package pursuant to a collective-bargaining agreement between her union and the employer, the employee is deemed to have accepted the benefits of the package, and waived her right to [unemployment] benefits, in return for her agreement to be terminated at a certain time. *Ivy v. Dudley* (1966), 6 Ohio St.2d 261, 35 O.O.2d 423, 217 N.E.2d 875; see, also, *Salzl v. Gibson Greeting Cards, Inc.* (1980), 61 Ohio St.2d 35, 15 O.O.3d 49, 399 N.E.2d 76. The termination when a collective-bargaining agreement exists is deemed to have been for just cause, rendering the employee statutorily ineligible for unemployment compensation. *Ivy,* 6 Ohio St.2d at 262, 35 O.O.2d 423, 217 N.E.2d 875.

{¶ 31} "One rationale for this exception is that union-supported employees are in a protected class and are afforded more bargaining power through the union. *Salzl,* 61 Ohio St.2d at 38, 15 O.O.3d 49, 399 N.E.2d 76. Employees who do not have the protection of union bargaining are not subject to this exception and are unable to waive their rights to unemployment benefits even if they agree to be discharged at a certain time.

{¶ 32} "This court has rejected the expansion of this narrow common-law exception when lower courts have erroneously applied the law applicable to collective-bargaining agreements to find an employee ineligible for benefits under R.C. 4141.29. In *May Dept. Stores Co. v. Ohio Bur. of Emp. Servs. Bd. of Rev.* (1975), 49 Ohio App.2d 21, 3 O.O.3d 100, 358 N.E.2d 1389, the appellate court concluded that an employee, regardless of union involvement, was terminated for just cause when he had agreed to compulsory termination as a condition of employment.

{¶ 33} "We disagreed with this conclusion and differentiated between a collective-bargaining agreement and an employee's acquiescence to a unilaterally imposed retirement plan in *Salzl,* 61 Ohio St.2d at 37–38, 15 O.O.3d 49, 399 N.E.2d 76. In stating that the purpose of R.C. Chapter 4141 is 'to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own,' id. at 39, 399 N.E.2d 76, 15 O.O.3d 49, this court was referring only to an agreement reached by collective bargaining, not to an employee's acquiescence to an employer's unilateral policy, where the alternative was immediate unemployment. Thus, for the purposes of eligibility for unemployment benefits, an employee's acquiescence to a unilaterally imposed policy setting a retirement age does not equate to a discharge for just cause, nor does it trigger voluntary unemployment, as described in R.C. 4141.29(D)(2)(a)."

{¶ 34} Peters admitted before the hearing officer that she was employed pursuant to the terms of a collective bargaining agreement entered into between her union and Continental. The terms of the maternity policy were not unilaterally imposed, but mutually agreed upon at arm's length by the parties to that collective bargaining agreement. These terms were not one-sided: the union negotiated for the accrual of seniority while on maternity leave, coverage continued under Continental's health insurance plan for the duration of the leave, an option of using sick time during the maternity leave existed, and full reinstatement was available at the end of maternity leave. In addition, the collective bargaining agreement gives flight attendants a one-time option to extend maternity leave for up to 12 months, apparently with the same eligibility for benefits. These concessions compel the conclusion under *Lorain Cty.* that Continental did not act unilaterally by imposing the maternity-leave policy. The common-law waiver exception thus applied to the maternity-leave policy.

{¶ 35} The terms of the collective bargaining agreement, mutually negotiated at arm's length by Peters's union and Continental, compel our conclusion that Peters was voluntarily unemployed. Unlike the employee in *Lorain Cty.* (and the conflict cases cited), who was unilaterally told that her employment would terminate upon a stated date, Peters, through her membership in the union, voluntarily agreed that she would be placed on maternity leave after her 27th week of pregnancy.[6] As in *Columbus Plastics Prods.,* when Peters became pregnant and placed herself "in the condition where the Company must comply with the [collective bargaining agreement], the only logical conclusion is that she voluntarily accepted the status of having been placed on leave of absence." *Leach,* 92 Ohio Law Abs. at 213, 28 O.O.2d 125, 194 N.E.2d 469. In exchange for doing so, she received several important benefits, including the ability to use accumulated sick leave and the accrual of seniority despite being on leave.

{¶ 36} Peters and the director question the applicability of *Columbus Plastics Prods.,* arguing that it interpreted an obsolete version of R.C. 4141.29 that contained a discriminatory presumption of ineligibility for benefits based on pregnancy.

{¶ 37} We acknowledge that *Columbus Plastics Prods.* considered a differently worded statute than the version of R.C. 4141.29 at issue in this case and that the common pleas court's decision is not binding precedent on this court. Neverthe-

---

6. It makes no difference to our conclusion whether Peters "voluntarily" became pregnant. Peters's eligibility for unemployment-compensation benefits is not predicated on the circumstances regarding her pregnancy but by her employment under the terms of a collective bargaining agreement that provides for a mandatory maternity leave. To hold otherwise would allow a pregnant claimant to argue that her pregnancy had been involuntary (for example, "unplanned") and thus entitle her to unemployment compensation. That result would be untenable.

less, the court of common pleas' discussion of common-law waiver when the applicant is subject to the terms of a collective bargaining agreement is instructive because it appears to have presaged the Supreme Court's decision in *Lorain Cty.*  *Lorain Cty.* is a de facto affirmation of the *Columbus Plastics Prods.* discussion on waiver and, unlike *Columbus Plastics Prods.*, is a binding decision by a superior court.  The waiver principle expressed in *Columbus Plastics Prods.* remains good law, or stated differently—*the* law—regardless of the language of R.C. 4141.29 in effect at the time that opinion was rendered.  The dissent's criticism of *Columbus Plastics Prods.* as being decided in a "different time" is immaterial to the legal point expressed therein.  In any event, the dissent's singular focus on *Columbus Plastics Prods.* comes at the expense of any citation of, much less discussion of, the *Lorain Cty.* decision.

{¶ 38} The Ohio cases that the dissent does cite are not on point.  For example, *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 23 OBR 57, 491 N.E.2d 298, stands for the premise that the Ohio Bureau of Employment Services is not precluded from determining whether an employee was discharged for just cause within the meaning of R.C. 4141.29(D)(2)(a) just because an arbitrator upheld the discharge as being for just cause according to the terms of a collective bargaining agreement.  That case has no factual relationship to this case.

{¶ 39} In *Dudley v. Morris* (1966), 6 Ohio App.2d 187, 35 O.O.2d 349, 217 N.E.2d 226, the Tenth District Court of Appeals held that an employee who was laid off pursuant to the terms of a collective bargaining agreement should not be denied unemployment benefits because R.C. 4141.32 did not distinguish between individual waivers and waivers when made by a union on behalf of the employee.  *Lorain Cty.* clearly refutes that reasoning.

{¶ 40} Finally, *Euclid v. Ohio Bur. of Emp. Servs.* (Apr. 2, 1992), Cuyahoga App. No. 60304, 1992 WL 67095, has no applicability to the issues raised in this appeal because the opinion makes no reference to unemployment compensation as it relates to collective bargaining agreements.

{¶ 41} Peters and the director maintain that the modern view relating to unemployment-compensation and maternity-leave policies contained in collective bargaining agreements is better expressed in *Hardy v. Florida Unemp. Appeals Comm.* (Fla.App.2000), 764 So.2d 684.  In *Hardy*, the Florida Court of Appeals held under identical facts that a flight attendant subject to a maternity leave policy contained in a collective bargaining agreement had not "voluntarily initiated her leave of absence by * * * becoming pregnant."  Id. at 685.  The court noted that "decisions from other states indicate that pregnant claimants placed on mandatory leaves of absence because of their pregnancy are eligible for unemployment benefits, regardless of whether the leaves are pursuant to a company

policy or a collective bargaining agreement." Id. *Hardy* found persuasive *Frontier Airlines, Inc. v. Indus. Comm.* (Colo.App.1986), 734 P.2d 142, 144, in which the Colorado Court of Appeals held that "whether claimants become pregnant of their own volition is totally irrelevant to their eligibility for [unemployment] benefits."

{¶ 42} Although *Frontier Airlines* has facts similar to those of this case, it is of limited precedential value because it relied on Colorado unemployment-compensation statutes that specifically relate to pregnancy. The court of appeals stated:

{¶ 43} "Section 8–73–108(4)(b)(I), C.R.S. (1986 Repl.Vol. 3B), specifically provides that benefits are available to a worker 'who, either voluntarily or involuntarily, is separated from employment because of pregnancy' if she satisfies the subsection's other requirements. This provision is a specific exception to the general rule in § 8–73–108(1)(a), C.R.S. (1986 Repl.Vol. 3B) that unemployment compensation is 'for the benefit of persons unemployed through no fault of their own.' See § 2–4–205, C.R.S. (1980 Repl.Vol. 1B); *Denver v. Hansen,* 650 P.2d 1319 (Colo.App.1982). Therefore, whether claimants became pregnant of their own volition is totally irrelevant to their eligibility for benefits." Id. at 144. This provision very clearly states that voluntary unemployment due to pregnancy is not a disqualifying event for benefits eligibility in Colorado. Ohio does not have a similar statutory provision.

{¶ 44} *Hardy* is more on point because it addresses a maternity-leave policy identical to that at issue in this case. The court of appeals reversed an administrative finding that a flight attendant's forced placement on maternity leave was voluntarily initiated by the employee:

{¶ 45} "Although no Florida decision on point could be located, decisions from other states indicate that pregnant claimants placed on mandatory leaves of absence because of their pregnancy are eligible for unemployment benefits, regardless of whether the leaves are pursuant to a company policy or a collective bargaining agreement. See *Douglas Aircraft Co. v. California Unemployment Ins. Appeals Bd.,* 180 Cal.App.2d 636, 648, 4 Cal.Rptr. 723 (Cal.Dist.Ct.App.1960) ('It is entirely immaterial, however, whether her leaving was the result of company policy or a collective bargaining agreement.'); *Myerson v. Board of Review, Div. of Employment Sec.,* 43 N.J.Super. 196, 128 A.2d 15, 17–18 (N.J.Super.Ct.App.Div.1957) ('Unemployment compensation is not to be denied persons merely because the employer or the collective bargaining agreement designates a period of unemployment as a leave of absence * * *. Unemployment brought upon certain workers as a result of a contract made by their union does not, just because of the contract, become voluntary in character so as to deprive them of unemployment compensation.'). Further, at least one decision from another state, which involved mandatory maternity leave for flight attend-

ants after their 27th week of pregnancy, indicates that 'whether claimants become pregnant of their own volition is totally irrelevant to their eligibility for [unemployment] benefits.' *Frontier Airlines, Inc. v. Industrial Comm'n. of the State of Colo.*, 734 P.2d 142, 144 (Colo.Ct.App.1986). Based on these decisions, we conclude the referee erred in determining that Hardy voluntarily initiated her leave of absence because of becoming pregnant." *Hardy*, 764 So.2d at 685–686.

{¶ 46} We agree that *Hardy* appears to utilize a more modern analysis of pregnancy issues relating to unemployment compensation. However, *Hardy* contains no discussion of common-law waiver through a collective bargaining agreement. *Lorain Cty.* recognized that Ohio creates an exception to the rule against waiving the right to benefits when an applicant is voluntarily unemployed because of the terms of a collective bargaining agreement. See *Lorain Cty. Aud.* at ¶ 31. This distinction is critical and compels our decision here. Hence, Peters's physical ability to continue working after her 27th week of pregnancy is immaterial to the question of whether she waived the right to unemployment benefits by virtue of a collective bargaining agreement.

{¶ 47} The terms of the maternity leave policy are clear: "A flight attendant may continue to fly through the end of the 27th week of her pregnancy provided she is fit to perform her duties." The only condition listed in the maternity-leave policy is that the flight attendant be fit to perform her duties up to the 27th week of pregnancy. Although Peters may have been physically capable of performing, and willing to perform, her duties as a flight attendant after the 27th week of pregnancy, her voluntary agreement, via the collective bargaining agreement, to the terms of the maternity-leave policy makes these facts irrelevant. It follows that Peters was not "involuntarily" unemployed as required by R.C. 4141.29; therefore, she was ineligible for unemployment-compensation benefits.

{¶ 48} We also agree that the conclusion reached in *Hardy* seems to be more compatible with current medical advancements in maternity care. The question of a pregnant flight attendant's continuing ability to fly and perform her job duties is more appropriately left to the discretion of the flight attendant and her doctor. While it is not an issue in this case, we share the dissent's concern that there may be legal questions relating to the interplay of the collective bargaining agreement and the Pregnancy Discrimination Act, Section 2000e–2(a), Title 42, U.S.Code, and other potentially applicable federal or state laws.

{¶ 49} Despite these reservations, *Lorain Cty.* controls the issue on appeal. The overarching analysis of Ohio unemployment-compensation law as it relates to this case must determine whether Peters is the type of temporarily unemployed worker to whom the law contemplates providing unemployment benefits. Our analysis concludes that she is not. As a union-represented worker, Peters is a party to the collective bargaining agreement. As such, she agreed to stop flying

after her 27th week of pregnancy in exchange for the accrual of seniority while on maternity leave, continued coverage under Continental's health insurance plan for the duration of the leave, the option of using sick time during the maternity leave, and full reinstatement at the end of maternity leave. In addition, the collective bargaining agreement gave Peters a one-time option to extend maternity leave for up to 12 months. These contract terms were reached as a result of arms-length negotiations between Continental and Peters's union, so Peters validly waived the right to unemployment-compensation benefits.

{¶ 50} The commission erred as a matter of law by affirming the hearing officer's conclusion that Peters had been involuntarily unemployed and therefore eligible for unemployment-compensation benefits. The court of common pleas did not err by reversing the commission. The assignments of error are over-ruled.

Judgment affirmed.

CALABRESE JR., P.J., concurs.

BLACKMON, J., dissents.

PATRICIA ANN BLACKMON, Judge, dissenting.

{¶ 51} I respectfully dissent from the majority opinion. For me, the issue is whether Peters was involuntarily separated from her employment with Continental Airlines. I believe she was. The collective bargaining agreement ("CBA")[7] is a characterization of the status of her employment, not her eligibility for unemployment compensation. If it concerned her eligibility for unemployment compensation, it should have been bargained for and made a part of the CBA.

{¶ 52} Other cases have in fact concluded that an employee was eligible for unemployment compensation irrespective of the terms of the CBA. See *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 23 OBR 57, 491 N.E.2d 298; *Dudley v. Morris* (1966), 6 Ohio App.2d 187, 217 N.E.2d 226; *Euclid v. Ohio Bur. of Emp. Servs.* (Apr. 2, 1992), Cuyahoga App. No. 60304, 1992 WL 67095.

---

7. One could argue that the CBA is unconstitutional. Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, was modified in 1978 to prohibit discrimination based on pregnancy. Therefore, terms and conditions of employment cannot be based on pregnancy. Equally, it is illegal to create terms of employment based on race or sex. A job could be limited based on pregnancy when safety is the motivation; no evidence exists that Peters's continued employment would affect her fetus. In fact, her doctor certified she was not limited by her pregnancy. The right not to be discriminated against cannot be bargained away in a CBA. *Laffey v. Northwest Airlines, Inc.* (C.A.D.C.1976), 567 F.2d 429, 447.

{¶ 53} Accordingly, the majority opinion's reliance on the Franklin County Common Pleas Court case of *Leach v. Columbus Plastics Prods., Inc.*,[8] is misplaced. This case was decided 43 years ago in a different time; it has not been cited by any other case.

{¶ 54} Additionally, the medical field as it applies to pregnancies has evolved since then. In *Leach,* the court held that the pregnant woman was not suitable for work. Today, a woman 27 weeks pregnant, roughly six months pregnant, works well beyond this date. In fact, Peters's doctor found no reason she could not continue to work. Therefore, she was capable of working. In finding that the employee was not suitable for work, the *Leach* case depended on former R.C. 4141.29(A)(4), which held that pregnant women eight weeks prior to and after birth were not suitable for employment. This section no longer exists under R.C. 4141.29.

{¶ 55} Moreover, the CBA in the *Leach* case set the date for mandatory leave based on the woman's and fetus's health. Continental has stated similar reasons for the mandatory leave in its CBA. However, in *Internatl. Union, United Auto. Workers v. Johnson Controls* (1991), 499 U.S. 187, 211, 111 S.Ct. 1196, 113 L.Ed.2d 158, the United States Supreme Court has held that women cannot be denied jobs based on maternal and fetal well-being policies. Therefore, it could be argued that this provision in the CBA is unconstitutional.

{¶ 56} Nevertheless, the ultimate conclusion for me is that Peters is eligible for unemployment benefits; she is, after all, involuntarily separated from her employment. I would have reversed the trial court's decision.

---

8. (C.P.1963), 92 Ohio Law Abs. 212, 28 O.O.2d 125, 194 N.E.2d 469.